2005 UT 76

**UTAH DIVISION OF CONSUMER PROTECTION, Plaintiff and Appellant,**

v.

**FLAGSHIP CAPITAL dba Integrated Credit Solutions, Defendant and Appellee.**

No. 20040172.

Supreme Court of Utah.

Nov. 8, 2005.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Buckner, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Richard D. Burbidge, J. Ryan Mitchell, Jefferson W. Gross, Salt Lake City, William E. Raney, Kansas City, MO, for defendant.

NEHRING, Justice:

¶ 1 The Utah Division of Consumer Protection brought an enforcement proceeding against Flagship Capital, a telemarketing company, for failure to comply with sanctions imposed when Flagship violated Utah law. The district court dismissed the case citing a lack of subject matter jurisdiction because it determined that certain provisions of the Utah Telephone and Facsimile Solicitation Act, Utah Code Ann. §§ 13–25a–101 to –107 (2001), and the Utah Telephone Fraud Prevention Act, Utah Code Ann. §§ 13–26–1 to – 11 (Supp.2004), are preempted by the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (1991). The Division appealed the district court's dismissal. We reverse.

## BACKGROUND

¶ 2 Flagship Capital, a Florida based telemarketing company, placed an unsolicited

telephone call to a Utah resident.[1] The Utah Division of Consumer Protection issued an administrative citation against Flagship for violation of the Utah Telephone and Facsimile Solicitation Act, Utah Code Ann. §§ 13–25a–101 to –107 (2001), and the Telephone Fraud Prevention Act, Utah Code Ann. § 13–26–3 (Supp.2003) (collectively, "the Utah laws"). The Division's citation stated that Flagship was in violation of Utah law because it used an automated dialer to place the call, in violation of Utah Code section 13–25a–103(1), and also because Flagship failed to register as a telephone soliciting business, as required by Utah Code section 13–26–3. Flagship challenged the citation. In an enforcement hearing, the Division ruled that Flagship violated the Utah laws, and that the laws were not preempted by the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (1991). The Division fined Flagship $2,000 and enjoined Flagship to comply with the registration requirement.

¶3 Flagship appealed the Division's order to the Utah Department of Commerce, claiming again that the federal TCPA preempts the Utah laws. The Department of Commerce determined that the question of preemption is a matter of constitutional law which must be decided by the courts and was therefore outside the scope of the Division's review. The Department upheld all of the Division's conclusions unrelated to preemption and ordered Flagship to register and pay the fine.

¶4 When Flagship failed to comply with the Department's order, the Division filed a civil complaint in the district court seeking enforcement of the Department's order. Flagship moved to dismiss the enforcement proceeding, again claiming that the Utah laws were preempted by the TCPA, and contending that the district court therefore did not have subject matter jurisdiction over the case. The district court agreed with Flagship and dismissed the case for lack of subject matter jurisdiction based on federal

preemption. The Division appealed. We reverse.

## ANALYSIS

¶5 The Division challenges the district court's dismissal on three grounds: (1) that preemption does not deprive a state court of subject matter jurisdiction to enforce the Department's determination that Flagship was in violation of state law; (2) that Flagship waived its preemption defense because it did not pursue judicial review; and (3) that Flagship is barred by res judicata from asserting a preemption defense because that issue was already decided by the Department. Flagship presents a fourth issue on cross-appeal: that the appeal is moot because the legislature has modified the relevant laws in such a way that Flagship is now exempt from them. Before addressing any of the Division's claims, we first analyze whether the district court erred in finding that the Utah laws were preempted. Since we find that they were not preempted, there is no need to address the Division's other claims. Finally, we address Flagship's mootness claim.

### I. FEDERAL PREEMPTION

¶6 The primary issue before us is whether the district court erred in determining that it did not have subject matter jurisdiction over the enforcement proceeding between the Division and Flagship. Whether a district court has subject matter jurisdiction is a question of law which we review for correctness. *Hous. Auth. v. Snyder*, 2002 UT 28, ¶10, 44 P.3d 724.

¶7 State courts generally have subject matter jurisdiction over cases arising under federal law. However, an action filed in a state court might be removed to federal court if it involves a federal question that "aris[es] under the Constitution, laws, or treaties of the United States." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see* 28 U.S.C. § 1441(b) (authorizing any claim that arises under federal law to be removed to

---

1. The call was placed through a related company called Integrated Credit Solutions and was made on behalf of Lighthouse Credit Foundation, a non-profit credit counseling and debt management organization.

federal court). To determine whether a cause of action brought in state court is eligible for removal to federal court, the United States Supreme Court has established the "well-pleaded complaint rule," in which "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life*, 481 U.S. at 63–64, 107 S.Ct. 1542.

¶ 8 There is, however, an exception to the well-pleaded complaint rule. A cause of action arising under state law might be removed to federal court "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). This exception is necessary because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.*

¶ 9 The district court invoked this exception to determine that it lacked subject matter jurisdiction over the Division's case. The district court's ruling was premised on its underlying conclusion that Utah Code sections 13–25a–103(1) and 13–26–3 (Supp.2003) are preempted by the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (1991).

¶ 10 Although the parties elected to not appeal the question of preemption, we must nevertheless address it. If we conclude that the Utah laws are preempted by the TCPA, we must go on to address the question of whether Utah courts may nevertheless exercise jurisdiction over Flagship's alleged violations of the TCPA. If we conclude that the Utah laws are not preempted by the TCPA, then the state court clearly retains jurisdiction and we need not address the question further.

¶ 11 The United States Supreme Court has identified two types of preemption: express and implied. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Express preemption, often referred to as "complete preemption," exists where a federal statute states an in-

tent to preempt state law. *Id.* By contrast, the Supreme Court has "recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (citations omitted). These scenarios of implied preemption have acquired their own labels and have become known as "field preemption" and "conflict preemption," respectively. For reasons we explain below, we conclude that Flagship can look to none of these preemption doctrines, not complete preemption, nor field preemption, nor conflict preemption, to support its assertion that the TCPA preempts Utah law.

### A. Complete Preemption

¶ 12 The United States Supreme Court has found complete preemption in only two circumstances: certain causes of action under the Labor Management Relations Act of 1947, 29 U.S.C. § 185, *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In each of these cases, "the federal statute at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). The preemptive power of those statutes was described as "unusually 'powerful,' " because they provided an express federal remedy for plaintiffs' claims to the exclusion of state remedies. For example, ERISA section 514, now codified at 29 U.S.C. § 1144, clearly states that "the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

¶ 13 While the message of complete preemption is delivered in a clear congressional voice, Congress remained mute on the subject of the federal TCPA's preemption of

state law in the context of interstate phone calls. Because the TCPA does not meet the requirements necessary to show express preemption, we conclude that the TCPA does not completely preempt the Utah laws.

¶ 14 This does not, of course, conclude the preemption inquiry. We next consider the more complex question of whether the TCPA impliedly preempts the Utah laws, either by conflict or by showing an intent to "occupy the field."

### B. Implied Field Preemption

■■■ ¶ 15 Generally, the presence of implied field preemption does not result in exclusive federal jurisdiction. Even if a federal statute preempts the state cause of action through field preemption, the case can be brought in state court. Field preemption empowers a party to remove the action to federal court. However, Flagship insists that in this case field preemption has clear jurisdictional consequences. The TCPA assigns exclusive jurisdiction to the federal district courts in cases brought by states or their representatives. 47 U.S.C. § 227(f)(2). Therefore, Flagship claims that if the TCPA displaces Utah statutes through field preemption the district court would be stripped of jurisdiction.

■■■ ¶ 16 The key element of an implied field preemption analysis is congressional intent. The United States Supreme Court has explained:

[I]n the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touches a field in which federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citations omitted). To summarize the Supreme Court in English, there are two ways in which congressional intent can be inferred: (1) the scheme of federal regulation must be so pervasive as to show Congress left no room for supplementation by states, or (2) the act concerns a field in which the federal interest dominates irrespective of the pervasiveness of regulatory schemes.

¶ 17 As the facts of this case reveal, Congress did not craft the TCPA as an all-pervasive regulatory scheme. Flagship violated the Utah statutes by using an automated dialer to place a call to a residence and by failing to register in Utah as a telephone solicitation business. Under the TCPA, it is illegal to place a call to a residence using an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(B). However, the subsection governing calls to residences does not, unlike the Utah laws, expressly prohibit the use of automatic telephone dialing systems.[2] The TCPA specifically proscribes the use of automatic telephone dialing systems in other instances, such as to an emergency phone line, hospital room, pager, cell phone, or simultaneous use of multiple lines of a multi-line business. 47 U.S.C. § 227(b)(1)(A), (D). The Utah law, however, is more comprehensive, prohibiting the use of an automated telephone dialing system in any instance, including, as here, to a residence. Thus it is apparent that Congress has left some room to the states to exercise legislative discretion to further protect its citizens from solicitation by automatic dialers.

¶ 18 The second way to infer congressional intent is if the act concerns a field in which federal interests dominate. While it is unquestioned that telemarketing is national, in fact global, in its scope, this confluence of commerce and technology, despite its power to inspire widespread annoyance and worse, throughout our nation, has not necessarily thereby created an exclusive federal interest. The Supreme Court has stated that "every subject that merits congressional legislation

2. Both the Utah laws and the TCPA define automatic telephone dialing systems as systems capable of storing or generating phone numbers and then calling those numbers. 47 U.S.C. § 227(a)(1); Utah Code Ann. § 13–25a–102(2).

is, by definition, a subject of national concern. That cannot mean, however, that every federal statute ousts all related state law." *Hillsborough County v. Automated Labs., Inc.*, 471 U.S. 707, 716, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). An apt analogy is the regulation of interstate highways. There, the interstate nature of the field is so undisputable that the subject has the word "interstate" in its name. However, this does not mean that federal interests dominate in the regulation of this interstate system. Instead, most of the regulation of the highways is left to the individual states to regulate through their police power to protect their citizens' health, welfare, and safety. Interstate telemarketing fits a similar niche. Like interstate highways, there is a federal interest, as illustrated by the TCPA, to define the basic parameters within which interstate telemarketing may occur. Within those walls, however, the states are left with discretion to determine whether the welfare of their citizens requires greater protection and to act on that determination.

¶ 19 Furthermore, when exercising the police power, Congress legislates in a realm jealously guarded by the states, one that if easily ousted by implied congressional acts would erode fundamental notions of federalism. In such an instance, the Supreme Court has established a demanding burden for showing congressional intent, insisting that it must be easily recognizable:

> Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where ... the field which congress [sic] is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be " 'clear and manifest.' "

*English*, 496 U.S. at 79, 110 S.Ct. 2270 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)). *Rath* specifically states that the police power is such an area traditionally occupied by the states, therefore requiring clear and manifest preemptive language. 430 U.S. at 525, 97 S.Ct. 1305.

¶ 20 Where the police power is at issue, there is a presumption that the regulations can constitutionally coexist, with a resulting burden of proof placed on the party claiming preemption. *Hillsborough County*, 471 U.S. at 716, 105 S.Ct. 2371. We conclude that Flagship has failed to establish that the TCPA clearly intended to preempt state laws concerning interstate telephone calls. Thus, we determine that Congress did not intend to "occupy the field" such that the Utah laws are preempted.

### C. Implied Conflict Preemption

¶ 21 We next consider whether the federal TCPA and the Utah laws are so incompatible as to render the Utah laws preempted by conflict preemption:

> [S]tate law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*English*, 496 U.S. at 79, 110 S.Ct. 2270 (citations omitted).

¶ 22 Close examination of the Utah laws shows that they are not in conflict with the TCPA, nor do they stand as an obstacle to the accomplishment and full objective of federal law. We see no reason why telemarketing companies would be unable to comply with both the Utah laws and the federal statutes. This intention of the Utah legislature is made clear by Utah Code section 13–25a–103(4), which reads: "A person may not make or authorize a telephone solicitation in violation of Title 47 U.S.C. 227." The telemarketing standards set by our legislature are stricter than, but do not directly conflict with, the federal standards. A telemarketer who complies with the Utah standards will have little difficulty complying with the federal standards. Moreover, the record does not reflect that a national telemarketer would confront any substantial hardship by being required to determine which of its calls reach the telephones of Utah residents. Therefore, the Utah law does not force a telemarketer

to conform its nationwide practices with Utah standards in order to prevent an inadvertent violation.[3] The telemarketer can simply identify those calls that would be made to Utah and choose to not make those calls or to conform those calls to the Utah regulations. That the TCPA creates a uniform nationwide minimum set of prohibited telemarketing activities does not mean that Utah's heightened standard for companies wishing to make phone calls to this state conflicts with the federal scheme.

¶ 23 Having concluded that the TCPA does not preempt the Utah laws either expressly or impliedly, we need not address the question of whether preemption is a jurisdictional question. Rather, because the Utah laws are independently valid, the district court had subject matter jurisdiction over this case.

## II. MOOTNESS

¶ 24 Finally, Flagship argues that this case is moot because the Utah laws have been amended to exclude charities. We reject this argument because it was not raised below, and was thus not properly preserved. Even had this argument been preserved, mootness would not be a factor because charities were not exempt at the time Flagship was cited. The exemption for charities was enacted in 2003 after the citation issued but was short-lived, being repealed less than a year later. Utah Code Ann. § 13–25a–103(2)(c) (2003) (repealed 2004).

## CONCLUSION

¶ 25 Although the issue was not directly raised before us, we conclude that the district court erred in determining that Utah Code sections 13–25a–103(1) and 13–26–3 were preempted by the federal TCPA. Accordingly, we also conclude that the district court had subject matter jurisdiction over the case. Due to this conclusion, we need not address the Division's arguments concerning res judicata and waiver, and we reject Flagship's argument that the case is now moot.

3. This is in contrast to some other forms of mass advertising, most notably advertising through e-mail. E-mail solicitors have argued that varying state regulations make it virtually impossible to comply with all the regulations because it is

¶ 26 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.

usually impossible for them to know into which state an e-mail will be sent. That, however, is not true here, where the destination state can be discerned by merely identifying the phone number's area code.