OPINION
{¶ 1} Plaintiff-appellant, Philip J. Charvat, appeals from a judgment of the Franklin County Court of Common Pleas insofar as it granted summary judgment to defendants-appellees, Telelytics, LLC and Black Hills Children's Ranch, Inc. Because defendants are entitled to judgment as a matter of law on some, but not all, of plaintiff's causes of action, we affirm in part and reverse in part.
 {¶ 2} Black Hills Children's Ranch, Inc. ("Black Hills") dba Pioneer Credit Debt Services ("PCD") is a South Dakota 501(c)(3) non-profit corporation that provides Christian-based credit counseling, budgeting, and liquidation programs to its clients. Telelytics, LLC ("Telelytics") is a California for-profit limited liability company that vends voice broadcast services to non-profit organizations. Plaintiff is an individual that maintains a residential telephone line in Franklin County, Ohio.
 {¶ 3} On August 6, 2003, Telelytics, on behalf of Black Hills, placed an unsolicited, pre-recorded telephone call, that did not originate in Ohio, to plaintiff on his residential telephone line. The recorded message stated:
Hi, I'm sorry I missed you. This is Mandy. I'm calling on behalf of PCD. Working through our non-profit organization, your credit card companies have authorized us to lower your interest rates to as low as zero percent, and get you out of debt quickly. This is not a new loan, and you don't have to qualify since you've already been approved. I'll be in the office until 10:00 p.m. Eastern time. And you can all us toll free at 866-523-9482. Again, that number is 866-523-9482.
As a result of the call, plaintiff filed a complaint against defendants alleging three violations of the Telephone Consumer Protection Act, Section 227, Title 47, U.S. Code et seq. ("TCPA") and five violations of the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. ("OCSPA").
 {¶ 4} Plaintiff's first and second causes of action allege that defendants' telephone call twice violated Section 227(b) of the TCPA because it was placed without plaintiff's prior consent and failed to state the name of the business making the call. Plaintiff's third cause of action asserted that because defendants failed to send their "Do Not Call Maintenance Policy" upon plaintiff's demand, the telephone call violated Section 227(d) of the TCPA. Plaintiff's fourth, fifth and eighth causes of action charged that defendants' TCPA violations also violate the OCSPA. Plaintiff's sixth and seventh causes of action claimed that defendants' telephone call independently violated the OCSPA because it failed to state the call's purpose was to make a sale, and because defendants failed to register the fictitious name "PCD" with the Ohio Secretary of State before making the call.
 {¶ 5} The parties filed competing motions for summary judgment. The trial court granted summary judgment to plaintiff on his second cause of action and granted summary judgment to defendants on plaintiff's remaining causes of action under the TCPA and the OCSPA.
 {¶ 6} Plaintiff appeals, assigning seven errors:
Assignment of Error No. 1:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [TCPA] BY INITIATING A PRERECORDED VOICE MESSAGE TELEMARKETING CALL TO PLAINTIFF'S RESIDENCE.
Assignment of Error No. 2:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [TCPA] BY FAILING TO SEND TO PLAINTIFF A COPY OF THEIR DO NOT CALL MAINTENANCE POLICY UPON PLAINTIFF'S DEMAND
Assignment of Error No. 3:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [OCSPA] BY INITIATING A PRERECORDED VOICE MESSAGE TELEMARKETING CALL TO PLAINTIFF'S RESIDENCE.
Assignment of Error No. 4:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [OCSPA] BY INITIATING A PRERECORDED VOICE MESSAGE TELEMARKETING CALL TO PLAINTIFF'S RESIDENCE WITHOUT VOLUNTARILY IDENTIFYING THE INDIVIDUAL OR ENTITY MAKING THE CALL.
Assignment of Error No. 5:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [OCSPA] BY FAILING TO SEND TO PLAINTIFF A COPY OF THEIR DO NOT CALL MAINTENANCE POLICY UPON PLAINTIFF'S DEMAND.
Assignment of Error No. 6:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [OCSPA] BY INITIATING A PRERECORDED VOICE MESSAGE TELEMARKETING CALL TO PLAINTIFF'S RESIDENCE THAT FAILS TO STATE, AT THE BEGINNING OF THE CALL, THAT THE PURPOSE OF THE CALL IS TO MAKE A SALE.
Assignment of Error No. 7:
THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM THAT DEFENDANTS KNOWINGLY VIOLATED THE [OCSPA] BY INITIATING A PRERECORDED VOICE MESSAGE TELEMARKETING CALL TO PLAINTIFF'S RESIDENCE THAT USES A FICTITIOUS NAME THAT IS NOT REGISTERED WITH THE OHIO SECRETARY OF STATE.
 {¶ 7} Plaintiff's seven assignments of error variously contend that the trial court erred when it largely overruled plaintiff's motion for summary judgment and granted defendants' motion for summary judgment. An appellate court's review of summary judgment is conducted under a de novo review. Koos v.Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. We apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 8} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 9} Plaintiff's first and second assignments of error are interrelated and will be discussed together. In them, plaintiff claims the trial court erred when it held that defendants' telephone call was exempt from two alleged TCPA violations.
 {¶ 10} Plaintiff bases his first cause of action on Section 227(b)(1)(B), Title 47, U.S. Code, which provides, in pertinent part, that "[i]t is unlawful for any person within the United States * * * to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call * * * is exempted by rule or order by the [Federal Communication] Commission under paragraph (2)(B)." Through its rule-making authority, the Federal Communication Commission ("FCC") exempts such calls "made by or on behalf of a tax-exempt non-profit organization." Section 64.1200(a)(2)(v), Title 47, C.F.R.
 {¶ 11} Plaintiff's third cause of action is premised on Section 64.1200(d)(1), Title 47, C.F.R., which states, in pertinent part, that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." According to the regulation, "[p]ersons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." Tax-exempt non-profit organizations, however, are not required to comply with 64.1200(d). Section 64.1200(d)(7), Title 47, C.F.R.
 {¶ 12} While plaintiff concedes that calls made on behalf of a tax-exempt non-profit organization generally are exempt from TCPA restrictions, plaintiff first argues that because the exemption is expressly limited to fundraising activities of the tax-exempt non-profit entity, it does not apply to commercial messages. To support his contentions, plaintiff cites to In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order (2003),18 F.C.C.R. 14014 ("2003 TCPA Order"). The 2003 TCPA Order attempted to clarify the type of fundraising arrangement that qualifies under the "on behalf of" requirement of the tax-exempt non-profit organization exemption.
 {¶ 13} In the 2003 TCPA Order, the FCC explained that if "a for-profit organization is delivering its own commercial message as part of a telemarketing campaign * * * encouraging the purchase or rental of, or investment in, property, goods, or services," that call is not "by or on behalf of a tax-exempt nonprofit organization." "[S]uch calls would not be entitled to exempt treatment under the TCPA," "even if accompanied by a donation to a charitable organization or referral to a tax-exempt nonprofit organization." Id. at ¶ 128. As the 2003 TCPA Order explained, a professional telemarketer conducting commercial telemarketing activities cannot "immunize itself by simply inserting purportedly `non-commercial' content into that message." Id. "A call to sell debt consolidation services, for example, is a commercial call regardless of whether the consumer is also referred to a tax-exempt nonprofit organization for counseling services." Id.
 {¶ 14} Plaintiff contends that because the 2003 TCPA Order expressly limits the tax-exempt non-profit organization exemption ("the exemption") to fundraising activities, whether made by or on behalf of a tax-exempt non-profit entity, and because defendants' pre-recorded telephone solicitation promoted the commercial sale of PCD's debt management and credit counseling services, defendants are not eligible for the exemption. Plaintiff, however, misconstrues the types of fundraising activities that are exempt from TCPA restrictions and takes the FCC's commercial call example out of context.
 {¶ 15} Plaintiff contends that charitable fundraising activities are limited to soliciting cash donations. Contrary to plaintiff's contentions, the 2003 TCPA Order began its discussion of the exemption by reaffirming "the determination that calls made by a for-profit telemarketer hired to solicit the purchase of goods or services or donations on behalf of a tax-exempt organization are exempted from the rules on telephone solicitation." 2003 TCPA Order, at ¶ 128. The FCC thus expressly acknowledged that tax-exempt organizations' fundraising activities are not limited to soliciting donations, but also include soliciting the purchase of goods or services, and that calls made by or on behalf of a tax-exempt non-profit organization for this primary purpose are exempt from TCPA restrictions. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order (2005), 20 F.C.C.R. 3788, at ¶ 30 ("2005 TCPA Order").
 {¶ 16} Plaintiff's attempt to portray all debt consolidation services as a type of commercial activity subject to TCPA restrictions takes the FCC's commercial call example out of context. The FCC's example related to the preceding sentences in the paragraph where the FCC attempted to distinguish between (1) a for-profit organization that calls to encourage the purchase of goods or services, yet donates some of the proceeds to a tax-exempt non-profit organization, and (2) a for-profit organization that solicits the purchase of goods or services or donations on behalf of a tax-exempt organization. See 2005 TCPA Order, at ¶ 30 (reaffirming and further clarifying the "on behalf of" distinction made in the 2003 TCPA Order). Under the FCC's example, a debt consolidation service is a TCPA-restricted commercial activity when a for-profit entity initiates a telephone call to offer its own debt consolidation servicesfor a profit and gives a portion of the proceeds to a tax-exempt non-profit organization. A for-profit organization, however, is exempt from certain TCPA restrictions when it offers a tax-exempt non-profit organization's debt consolidation service for the non-profit's fundraising purposes, not for its own commercial profit-making purpose. Id.
 {¶ 17} Here, Telelytics' telephone call solicited the purchase of PCD's debt management and credit counseling services to raise charitable funds for Black Hills, a tax-exempt non-profit organization. By selling the charitable services PCD provided as part of Black Hills' underlying mission, Telelytics' telephone call was initiated on behalf of Black Hills for fundraising purposes, not for its own commercial, profit-making purpose. Telelytics' call thus is exempt from the restrictions imposed by Section 227(b)(1)(B), Title 47, U.S. Code and Section 64.1200(d)(1), Title 47, C.F.R.
 {¶ 18} Plaintiff next claims that even if defendants' telephone call qualifies for the exemption, defendants are nevertheless subject to the TCPA restrictions because the FCC exceeded the scope of its rule-making authority when it implemented the exemption. Plaintiff claims the exemption is "manifestly contrary" to the TCPA's express condition that the FCC not exempt from TCPA restrictions commercial calls that (1) adversely affect the privacy rights protected under the TCPA, and (2) include the transmission of any unsolicited advertisement. Plaintiff thus concludes the exemption cannot be enforced.
 {¶ 19} "`The power of an administrative agency to administer a congressionally created * * * program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' Morton v. Ruiz,415 U.S. 199, 231 [94 S.Ct. 1055, 39 L.Ed.2d 270] (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Charvat v. Dispatch Consumer Serv., Inc.,95 Ohio St.3d 505, 2002-Ohio-2838, at ¶ 23, quoting Chevron U.S.A., Inc.v. Natural Resources Defense Council, Inc. (1984), 467 U.S. 837,843-844.
 {¶ 20} Here, the TCPA explicitly left the FCC the authority to exempt calls from the requirements of Section 227(b)(1) that (1) "are not made for a commercial purpose," or (2) are "such classes or categories of calls made for commercial purposes as the [FCC] determines * * * will not adversely affect the privacy rights that [Section 227(b)(1)] intended to protect; and do not include the transmission of any unsolicited advertisement[.]" Section 227(b)(1) and 227(b)(2)(B), Title 47, U.S.Code. Pursuant to the conditions of that authority, the FCC exempted calls "made by or on behalf of a tax-exempt non-profit organization." Section 64.1200(a)(2)(v), Title 47, C.F.R.
 {¶ 21} Although plaintiff's argument focuses on the second condition to FCC's exemption authority, the issue resolves more directly upon the first condition that expressly authorizes the FCC to exempt "calls that are not made for a commercial purpose." Section 227(b)(2)(B), Title 47, U.S.Code. Calls placed by or on behalf of a tax-exempt non-profit organization for fundraising purposes are not commercial calls, even if they solicit the purchase of goods or services, because they are not aimed at generating a profit. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order (1995), 7 F.C.C.R. 8752, at ¶ 40. Because the exemption does not apply to calls made for commercial purposes, the exemption is not "manifestly contrary" to either the first or second condition placed on the FCC's rule-making authority. Accordingly, the FCC's regulation exempting tax-exempt non-profit organizations from the requirements of Section 227(b)(1) is given controlling weight and, pursuant to our preceding analysis, defendants' telephone call is exempt from the alleged TCPA violations. Plaintiff's first and second assignments of error are overruled.
 {¶ 22} Plaintiff's third, fourth, fifth, sixth, and seventh assignments of error categorically contend that the trial court erred when it held the TCPA preempted and precluded plaintiff's five OCSPA claims. Noting plaintiff's OCSPA claims are based on an interstate telephone call, the trial court found the TCPA preempts plaintiff's state law claims for two reasons: (1) because the TCPA has a dominant federal interest in interstate telemarketing calls, and (2) because the OCSPA's additional requirements on interstate telemarketing calls conflict with a principle objective of the TCPA's federal scheme. Plaintiff counters that the TCPA neither expressly nor impliedly preempts his state law claims.
 {¶ 23} The Supremacy Clause of the United States Constitution provides that "the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Article VI, United States Constitution; see, also, Minton v. Honda of Am.Mfg., Inc. (1997), 80 Ohio St.3d 62, 68, abrogated in other respects by Geier v. Am. Honda Motor Co., Inc. (2000),529 U.S. 861. Pursuant to the Supremacy Clause, Congress may foreclose state action by (1) express language in a congressional enactment ("express preemption"); (2) implication from the depth and breadth of a congressional scheme that occupies the legislative field ("field preemption"); or (3) implication because of a conflict with a congressional enactment ("conflict preemption").Lorillard Tobacco Co. v. Reilly (2001), 533 U.S. 525, 540-541, citing Cipollone v. Liggett Group, Inc. (1992), 505 U.S. 504,517; Fidelity Fed. Sav. Loan Assn. v. de la Cuesta (1992),458 U.S. 141, 153; Geier, at 869-874. A federal agency acting within the scope of its congressionally delegated authority may also preempt state regulation. Minton, at 68.
 {¶ 24} The critical question in any preemption analysis is whether Congress intended federal law to supersede state law. Inre Miamisburg (1994), 68 Ohio St.3d 255, 260. In considering issues arising under the Supremacy Clause, courts must start with a presumption against preemption and instead assume federal law is not to supersede the historic police powers of the states unless that is the clear and manifest purpose of Congress.Minton, at 69. Any applicable preemption provision must be read narrowly in light of the presumption against preemption. Id. at 70.
 {¶ 25} We initially consider express preemption and whether Congress explicitly defined the extent to which its enactment preempts state law. Minton, at 68. Defendants suggest the TCPA expressly preempts the OCSPA's authority to regulate interstate
telemarketing calls because Congress specifically proscribed the TCPA from preempting any state law that imposes more restrictiveintrastate requirements or regulations on certain telemarketing calls ("savings clause"). Section 227(e)(1), Title 47, U.S.Code. The TCPA savings clause states:
(e) Effect on State Law
(1) State law not preempted
Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits —
(A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
(B) the use of automatic telephone dialing systems;
(C) the use of artificial or prerecorded voice messages; or
(D) the making of telephone solicitations.
 {¶ 26} Although the savings clause clearly prohibits the preemption of any state law that imposes more restrictive intrastate requirements or regulations, the savings clause does not address whether the TCPA preempts states from regulating interstate calls. Many courts strain to interpret the exact scope of the term "intrastate" to resolve whether the express prohibition also applies to interstate telemarketing calls, or whether it inversely preempts states from regulating interstate telemarketing calls by limiting the states jurisdiction to intrastate telemarketing calls. Compare State ex rel. Stenehjemv. FreeEats.com, Inc. (2006), 712 N.W.2d 828 with U.S. v.Lockyer (Feb. 27, 2006), E.D. Cal. No. 2:05-CV-2257MCEKJM.
 {¶ 27} Attempts at interpretation, however, ignore the pivotal fact that Congress remained silent on the issue. Congress could have included express preemption language when it expressly preempted state law with respect to the technical and procedural standards in subsection (d), but the absence of such preemptive language demonstrates that Congress did not expressly preempt states from regulating interstate telemarketing calls. Given the presumption against preemption and the fact that the savings clause must be construed narrowly in light of that presumption, we discern in the statute no "clear and manifest" language that Congress intended the TCPA to completely preempt the OCSPA with regard to interstate telemarketing regulations.
 {¶ 28} Because Congress remained silent on whether the TCPA explicitly preempts analogous state laws, the issue resolves to whether the TCPA implicitly or impliedly, through field preemption or conflict preemption, preempts state laws that impose more restrictive regulations on interstate telemarketing calls. Field preemption analyzes whether Congress itself intended to exclusively regulate a particular field. While the specific issue here is limited to the preemption of interstate telemarketing, the doctrine of implied field preemption requires that, in order to determine whether Congress intended to exclusively regulate that particular field, we examine the subject matter the federal legislation regulates. Congress' intent may be inferred from (1) a "scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or (2) an Act of Congress that "touch[es] a field in which federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Englishv. Gen. Elec. Co. (1990), 496 U.S. 72, 79.
 {¶ 29} Here, by amending Section 152(b), Title 47, U.S. Code to specifically except the TCPA from the "interstate" limitation of Section 152(a), Title 47, U.S. Code, Congress expressed its intent to regulate both interstate and intrastate telemarketing calls under the TCPA; see, also, Section 64.1200 et seq., Title 47, C.F.R. (demonstrating the TCPA governs both intrastate and interstate transmissions). Congress nonetheless specifically proscribed the TCPA from preempting any state law that imposes more restrictive intrastate requirements or regulations on certain telemarketing calls. Section 227(e), Title 47, U.S.Code; 2003 TCPA Order, at ¶ 83. The savings clause thus demonstrates that Congress intended the TCPA to act as the floor for intrastate regulation, thereby implicitly authorizing the states to adopt more restrictive regulations governing intrastate telemarketing. See 2003 TCPA Order, at ¶ 81-82. Because Congress left room to the states to adopt more restrictive intrastate regulations, the TCPA is not so pervasive as to exclude states from regulating the field of telemarketing calls. See Minton,
at 76 (agreeing that a general savings clause in National Traffic Motor Vehicle Safety Act demonstrates that Congress did not intend to occupy the entire field of automotive safety).
 {¶ 30} In addition to reserving the states' intrastate regulatory authority, Congress granted state courts jurisdiction over private actions under the TCPA, Section 227(b)(3), Title 47, U.S. Code, and prohibited the TCPA from interfering with an official "proceeding in State court on the basis of an alleged violation of any general civil or criminal statute of such State." Section 227(f)(6), Title 47, U.S.Code. Such language, in effect, illustrates Congress' intent to cede enforcement power to the states and, inversely, demonstrates that Congress did not intend the TCPA to be so dominant as to preclude enforcement of state laws on telemarketing calls. We therefore conclude that because Congress enacted the TCPA to govern both intrastate and interstate telemarketing calls but yielded power to the states to regulate and enforce intrastate telemarketing laws, the TCPA does not preempt the OCSPA in the field of telemarketing regulation.
 {¶ 31} We next consider implied conflict preemption, which analyzes (1) whether a private party can comply with both state and federal requirements, or (2) whether state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." English, supra, at 79. Plaintiff correctly contends that his five OCSPA claims do not actually conflict with the TCPA: the OCSPA standards are stricter than the TCPA but nothing prevents a telemarketing company from complying with both the OCSPA and the TCPA. The trial court, however, found in part that the TCPA preempted plaintiff's five OCSPA claims because the OCSPA's more restrictive efforts to regulate interstate telemarketing calls conflict with a principle objective of the TCPA.
 {¶ 32} The legislative history of the federal scheme reveals that Congress principally enacted the TCPA (1) to protect privacy interests of residential subscribers and (2) to facilitate interstate commerce. See H.R. 1304, 102nd Congress (1991), S. 1410, 102nd Congress (1991), S. 1462, 102nd Congress (1991). In order to facilitate interstate commerce, Congress intended to promote a uniform regulatory scheme under which telemarketers should not be subject to multiple, conflicting regulations. (2003 TCPA Order, at ¶ 83.) Allowing states to enact "inconsistent interstate rules frustrate[s] the federal objective of creating uniform national rules, to avoid burdensome compliance costs for telemarketers and potential consumer confusion." Id. By order, the FCC stated that "any state regulation of interstate telemarketing calls that differs from our rules almost certainly conflict[s] with and frustrate[s] the federal scheme and almost certainly would be preempted." Id. at ¶ 84. Nonetheless, "nothing prohibits states from enforcing state regulations that are consistent with the TCPA." Id. at ¶ 85.
 {¶ 33} Within that framework, we individually examine whether plaintiff's five OCSPA claims conflict with the TCPA's objective of creating uniform national rules on interstate telemarketing calls. Plaintiff asserts five different claims, contending defendants knowingly and willingly violated the OCSPA (1) by calling plaintiff without his prior consent by way of a pre-recorded message telemarketing call (plaintiff's fourth cause of action), (2) by calling plaintiff using a pre-recorded message that failed to state the name of the business making the call (plaintiff's fifth cause of action), (3) by calling plaintiff by way of a pre-recorded message telemarketing call that fails to state, at the beginning of the call, that the purpose of the call is to make a sale (plaintiff's sixth cause of action), (4) by calling plaintiff with a pre-recorded telemarketing message that used the fictitious name "PCD" without registering the name with the Ohio Secretary of State before making the call (plaintiff's seventh cause of action), and (5) by failing to send plaintiff PCD's do not call maintenance policy upon plaintiff's demand (plaintiff's eighth cause of action).
 {¶ 34} For ease of discussion, we address plaintiff's OCSPA claims out of order. The basis for plaintiff's third OCSPA claim is a provision of that statute requiring telemarketers to state that the call is to make a sale. The TCPA, on the other hand, does not require such disclosure but merely requires telemarketers to clearly state the name and telephone number of the business responsible for initiating the call. Similarly, the basis for plaintiff's fourth OCSPA claim is a portion of the statute that requires a telemarketer to register its fictitious name with the Ohio Secretary of State. The TCPA, however, does not mention a fictitious name, but only requires a telemarketer to state the identity of the registered business responsible for initiating the call. As a result, the TCPA requires registration only indirectly, but without reference to a fictitious name. Moreover, OCSPA requires registration in Ohio; TCPA does not. Although the differences are subtle, the provisions of the OCSPA that underlie plaintiff's third and fourth OCSPA claims place more restrictive regulations on interstate telemarketing calls than does the TCPA.
 {¶ 35} The issue is not whether we discern that a national tax-exempt non-profit telemarketer would suffer a substantial hardship by conforming its pre-recorded message to meet the more restrictive requirements of each state in which it seeks to contact residents. Rather, the issue is the FCC's view, as the Ohio Supreme Court's decisions constrain us to defer to an agency's own interpretation and commentary regarding its own rules. Charvat, at ¶ 22. To that end, FCC orders specify that a state's more restrictive interstate regulations, such as the OCSPA, frustrate the federal objective of creating uniform national rules by subjecting national telemarketers to multiple, conflicting regulations. Accordingly, the TCPA preempts plaintiff's third and fourth OCSPA claims because they conflict with the full purposes and objectives of the TCPA. Plaintiff's sixth and seventh assignments of error are overruled.
 {¶ 36} Plaintiff's first and fifth OCSPA claims derive from and are consistent with the TCPA restrictions and requirements imposed by Section 227(b)(1)(B), Title 47, U.S. Code and Section 64.1200(d)(1), Title 47, C.F.R. In fact, plaintiff exclusively supports his first and fifth OCSPA claims on a consent judgment entry determining that a violation of the TCPA or its regulations is also a violation of the OCSPA.
 {¶ 37} Nonetheless, as previously discussed under plaintiff's first and second assignments of errors, the FCC, pursuant to its rule-making authority, expressly exempts tax-exempt non-profit organizations and those acting on their behalf from complying with such federal restrictions. Thus, to the extent, if any, plaintiff's first and fifth OCSPA claims exist independently from the related TCPA claims, plaintiff's first and second OCSPA claims stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and the FCC. Specifically, they frustrate the TCPA's uniform rules on interstate telemarketing calls. They further eliminate the established tax-exempt non-profit organization exemption expressly codified in the TCPA's regulations and nullify the FCC's decision that tax-exempt non-profit organizations should be exempt from the restrictions imposed by Section 227(b)(1)(B), Title 47, U.S. Code and Section 64.1200(d)(1), Title 47, C.F.R. Consequently, plaintiff's first and fifth OCSPA claims conflict with and are preempted by the TCPA. Plaintiff's third and fifth assignments of error are overruled.
 {¶ 38} Plaintiff's second OCSPA claim derives from and is consistent with the TCPA requirement imposed by Section 64.1200(b)(1), Title 47, C.F.R. Indeed, like plaintiff's first and fifth OCSPA claims, plaintiff's second OCSPA claim is based exclusively on a consent judgment entry determining that a violation of the TCPA or its regulations is also a violation of the OCSPA. Unlike the exemptions defendants enjoy under Section 227(b)(1)(B), Title 47, U.S. Code and Section 64.1200(d)(1), Title 47, C.F.R., defendants are not exempt from the requirement imposed by Section 64.1200(b)(1).
 {¶ 39} Section 64.1200(b)(1) provides, in part, that "[a]ll artificial or prerecorded telephone messages shall: (1) At the beginning of the message, state the identity of the business * * * responsible for initiating the call." The trial court correctly ruled that defendants violated Section 64.1200(b)(1) by failing to disclose the registered name of the business responsible for initiating the call. Because plaintiff's second OCSPA claim is consistent with and derived from Section 64.1200(b)(1), the TCPA does not preempt plaintiff's second OCSPA claim.
 {¶ 40} Although the trial court erroneously concluded that the TCPA preempted and precluded plaintiff's second OCSPA claim, the trial court also concluded plaintiff's second OCSPA claim failed because it was based on consent judgment entries filed after defendants made the call at issue.
 {¶ 41} The nucleus of the OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). Although R.C.1345.02(B) lists a series of unfair or deceptive acts or practices, an OCSPA violation is not limited to the enumerated examples. R.C. 1345.09(B) permits recovery for "an act or practice determined by a court of this state to violate section1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code * * *." R.C. 1345.05(A)(3) provides that the Attorney General must "[m]ake available for public inspection all rules * * * together with all judgments, including supporting opinions, by courts of this state * * * determining that specific acts or practices violate section 1345.02 or 1345.03 of the Revised Code."
 {¶ 42} As relevant here, plaintiff cited to Charvat v.Continental Mtge. Services, Inc. (June 2, 2000), Franklin C.C.P. No. 99CVH12-10255 ("Charvat I") and Charvat v. Oasis Mtge.,Inc. (Sept. 6, 2002), Franklin C.C.P. No. 01CVH06-6028 ("Charvat II") to support his proposition that a violation of the TCPA is also a violation of the OCSPA. The trial court determined that because these decisions were consent judgment entries filed after the call at issue, they do not meet the requirements of R.C. 1345.09(B). More specifically, the court found that the consent judgments are not "determined by a court" because a consent judgment is an agreement between the parties that the court sanctions, not a judgment rendered on the merits. Based in part on that determination, the court granted summary judgment in favor of defendants.
 {¶ 43} Because the relevant consent judgments were filed with the Ohio Attorney General before defendants made the call subject of plaintiff's claim, the issue distills to whether a consent judgment qualifies as a determination of a court within the language of R.C. 1345.09(B). As the trial court properly noted, a consent judgment typically is not a judgment on the merits, but a contract between the parties that the court reduces to a judgment. We agree that, apart from any effect under the doctrines of res judicata and estoppel, a consent judgment generally cannot be considered precedent in a later case. Nonetheless, a consent judgment's precedential value is not determinative under R.C. 1345.09(B), because the statute specifically refers to a court's determination, not a judgment. Therefore, even within a consent judgment, "an act or practice determined by a court" to violate the OCSPA is actionable under R.C. 1345.09(B).
 {¶ 44} In Charvat I and Charvat II, the defendants consented to the fact that they each failed to state the name of the business responsible for initiating the telephone call at issue. Having found these failures violated the FCC's TCPA regulations, each court "determined and declared that it is an unfair or deceptive and/or unconscionable act or practice for a supplier to engage a consumer in a telephone solicitation transaction and violate any of the FCC's TCPA regulations."Charvat I, at ¶ 6, Charvat II, at ¶ 8. More specifically, each court determined that "it is an unfair or deceptive practice for a supplier to initiate a prerecorded telephone call to a consumer and fail to include the name of the business or entity making the call." Charvat I, at ¶ 6(b); see Charvat II, at ¶ 8(a).
 {¶ 45} Because the courts in Charvat I and Charvat II
determined that a violation of Section 64.1200(b)(1), Title 47, U.S. Code is an "unfair or deceptive act or practice" under R.C.1345.02(A), and because the TCPA does not preempt plaintiff's second OCSPA claim, the trial court erroneously granted summary judgment in favor of defendants on plaintiff's second OCSPA claim. Accordingly, we sustain plaintiff's fourth assignment of error.
 {¶ 46} Having overruled plaintiff's first, second, third, fifth, sixth, and seventh assignments of error, but having sustained plaintiff's fourth assignment of error, we affirm in part and reverse in part the judgment of the trial court and remand for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part; causeremanded.
Petree and Sadler, JJ., concur.