957 So.2d 25 (2007)
TSA STORES, INC., A Delaware Corporation, Appellant,
v.
DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Appellee.
No. 5D06-1775.
District Court of Appeal of Florida, Fifth District.
April 20, 2007.
*26 Brian J. Gillis, of Bogin, Munns & Munns, P.A., Orlando, and William E. Raney, of Copilevitz & Canter, LLC, Kansas City, Missouri, for Appellant.
Louis E. Stolba and Raymond C. Conklin, of Florida Department of Agriculture and Consumer Services, Tallahassee, for Appellee.
MONACO, J.
This case causes us to examine the reach of section 501.059, Florida Statutes (2004), the statute that governs telephone solicitations in Florida. TSA Stores, Inc., which operates retail establishments in Florida known as "The Sports Authority," seeks reversal of the trial court's Final Summary Judgment and Permanent Injunction in which the court: (1) permanently enjoined TSA from calling Florida consumers whose names appear on the quarterly "no sales solicitation calls" list published by the appellee, State of Florida Department of Agriculture and Consumer Services; and (2) permanently enjoined TSA from using or employing an automated system for the selection and dialing of telephone numbers or playing a recorded message when the number called is answered; and (3) imposed a civil penalty for the statutory violations. We are presented in this case with issues of first impression in Florida. We affirm the final judgment as it relates to the automated dialing and recorded message violations, but reverse with respect to the calls on the "do-not-call" lists because these calls fall within a statutory exemption.
The Department initiated this case by the filing of a complaint accusing TSA of violating sections 501.059(4) and (7), and seeking injunctive relief and civil penalties. At the time TSA had its principal place of business in Broward County, Florida, but the telephone calls that form the substance of the complaint were made to consumers throughout Florida, including Orange County, the venue for this action.[1] The Department alleged that TSA was conducting part of its business by making or allowing others to make telephonic sales calls to citizens of Florida and playing a recorded message when the number called was answered. According to the Department, TSA had been making unsolicited telephonic sales calls to persons in this state whose names appeared on the then-current quarterly no sales solicitation list published by the Department. In addition, the Department alleged that TSA made or knowingly allowed sales call to be made with an automated system without a live operator introducing the message in violation of section 501.059(7), Florida Statutes.
TSA first attempted to remove this case to the United States District Court for the Middle District of Florida. TSA posited that the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, preempted section 501.059, and that removal was, therefore, justified. The federal court concluded, however, that the case was improvidently removed from the Florida courts, and remanded it back to the Circuit Court for Orange County, Florida.
*27 After the close of the state court pleadings, the Department moved for summary judgment. The trial court, in granting summary judgment, first adopted the rulings of the federal court as its own. It then concluded that TSA violated section 501.059 in two distinct ways.
First, it addressed the issues surrounding seventy-seven persons who actually made purchases at The Sports Authority facilities in Florida within 18 months preceding TSA's making of an unsolicited telephone sales call. Each of these persons was on the Florida "do-not-call" list.[2] TSA asserted that all of these persons fell within the exemption set forth in section 501.059(1)(c)3., which allows a telephonic sales call to a person on the "do-not-call" list if that person is one "with whom the telephone solicitor has a prior or existing business relationship." The Department, however, argued that a "business relationship" implies more than the "mere speculation" that a past customer may choose to buy from TSA again. The trial judge agreed with the Department and concluded that "the mere occurrence of sales to TSA's past customers  without more  do [sic.] not constitute `prior or existing business relationships' within the contemplation of subsection 501.059(1)(c)3."
Next, the trial court considered the issues surrounding seventy-three persons on the do-not-call list who received a recorded message concerning a sale to be held at TSA's stores within Orange County, Florida. TSA in this connection was charged with violating section 501.059(7)(a), which reads:
No person shall make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called.
While this provision specifically protects persons on the do-not-call list, it does not appear to be subject to an exception for prior or existing business relationships. See § 501.059(7)(b), Fla. Stat. (2004).
TSA argued, first, that the automated pitches were not "telephonic sales calls" because they only invited past customers to a sales event at TSA stores. Next, it argued that in any event, each of these calls was made from California to Florida customers, and that because Florida courts do not have jurisdiction over interstate calls, the statute did not apply to it. The trial court found, however, that the Florida statute applied, and that TSA violated it because the calls constituted telephonic sales calls within the meaning of the statute. Implicit in these holdings of the trial court is the conclusion that even though the telephone calls were initiated from outside of Florida, the TCPA did not preempt the applicable Florida statute.
I. Federal Preemption.
The TCPA resulted from findings made by Congress during the early 1990's that for many consumers telemarketing sales calls were an "intrusive invasion of privacy," as well as an unwanted opportunity for unscrupulous persons to commit fraud upon them. See Mainstream Mktg. Servs., Inc. v. F.T.C., 358 F.3d 1228, 1235 (10th Cir.2004). Congress estimated that consumers were losing about $40 billion per year as a result of telemarketing fraud. Id. In order to deal with this growing concern Congress authorized the creation *28 of a national database of consumers who objected to receiving such telephone calls. Since then, well over half of the states have adopted statutes restricting various practices by telemarketing firms. See Van Bergen v. Minnesota, 59 F.3d 1541, 1548 (8th Cir.1995).
The overarching consideration governing the dispute before us in the present case is whether the federal government by enactment of the TCPA has preempted the regulation of telephonic sales calls. That is to say, we must first determine whether there was any room for regulation by Florida of these telephone calls. The answer is to be found within the TCPA itself.
47 U.S.C. § 227(e)(1) is entitled "State law not preempted," and reads as follows:
Except for the standards prescribed under subsection (d)[[3]] of this section and subject to paragraph (2)[[4]] of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits 
(A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
(B) the use of automatic telephone dialing systems;
(C) the use of artificial or prerecorded voice messages; or
(D) the making of telephone solicitations.
In addition, 47 U.S.C. § 227(f) is instructive. That provision authorizes states to bring civil actions for violations of the TCPA in federal district courts. Of particular interest is paragraph (6) of the subsection, entitled "Effect on State court proceedings," which reads:
Nothing contained in this subsection shall be construed to prohibit an authorized State official from proceeding in State court on the basis of an alleged violation of any general or criminal statute of such State.
TSA essentially argues that the federal statute has preempted state laws governing the regulation of unsolicited sales calls and the improper use of prerecorded messages claims. Yet the TCPA specifically disclaims a complete preemption in these areas. See Fla. Dep't of Agric. & Consumer Servs. v. The Sports Authority Fla., Inc., Case No. 6:04-cv-115-Orl-JGG, 2004 U.S. Dist. LEXIS 29646, at *9 (M.D. Fla. June 4, 2004). Thus, the TCPA carries no implication in its language that Congress intended to preempt state law in this regard.
Certainly if Congress had intended a complete preemption of other state laws, that intent could easily have been manifest as part of the statute. Moreover, the language used in subsections (e)(1) and (f) of the TCPA makes it clear that Congress did not intend to occupy the field, at least with respect to the disclaimers to that effect contained in those provisions. See Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); Van Bergen, 59 F.3d at 1548. We conclude, therefore, that section 501.059 of the Florida Statutes does have significant vitality both in the regulation of unsolicited telephone sales solicitations *29 and in the improper use of prerecorded messages and automated dialing machines described in the statute.
II. Unsolicited Telephonic Sales Calls.
Section 501.059(3), Florida Statutes, allows the placement for a nominal fee of any residential, mobile, or telephonic paging device number on a "no sales solicitation calls" listing to be maintained by the Department. Placement of a number on the so-called "do-not-call" list indicates that the subscriber does not wish to receive unsolicited telephonic sales calls. Section 501.059(4), one of the statutes that TSA is accused of violating, reads in pertinent part:
No telephone solicitor shall make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department.
As noted previously, seventy-seven persons within Florida who were on the do-not-call list were telephonically contacted by TSA for the purpose of soliciting a sale of goods. Each of these persons, however, had actually made purchases from TSA within eighteen months preceding the call. Although TSA argued that all of these persons had a "prior or existing business relationship" with them, and therefore fell within the section 501.059(1)(c)3. exemption, the trial court disagreed.
Section 501.059(1)(c) of the Florida Statutes defines an "unsolicited telephonic sales call" to be a telephonic sales call other than one specifically exempted by the statute. Among the four exemptions listed, the two that are pertinent to our decision are sales calls other than a call made:
1. In response to an express request of the person called; [and]
. . .
3. To any person with whom the telephone solicitor has a prior or existing business relationship.
§ 501.059(1)(c)1., 3., Fla. Stat. (2004).
TSA first argues that it had the express consent of all those it called because each consumer provided his or her telephone number to TSA at the time of the sale. Voluntarily surrendering one's telephone number to a sales clerk might under some circumstances give an implied authority for the store to make a later telephonic sales call, but it certainly does not give an "express" consent. As an express consent is required by this clear language of this exemption, we conclude that the trial judge was correct in determining that this exemption was not applicable.
A more difficult issue is presented by the "prior or existing business relationship" exemption, however. Unfortunately, section 501.059 does not define this phrase. In circumstances where the Legislature chooses not to define a term, courts may properly be informed by case law or related statutory provisions that do give meaning to the term. See State v. Hagan, 387 So.2d 943, 945 (Fla.1980); Westerheide v. State, 767 So.2d 637, 650 (Fla. 5th DCA 2000). Thus, in State v. Kirvin, 718 So.2d 893 (Fla. 1st DCA 1998), for example, the appellate court was able to utilize a definition for "territorial sea baseline" found in the Code of Federal Regulations when interpreting a Florida constitutional provision concerning fishing nets.
The Federal Communications Commission by way of the Code of Federal Regulations provides us with a definition for "established business relationship," as used in the TCPA. 47 C.F.R. *30 § 64.1200(f)(4) defines that term as meaning
a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.
It appears, therefore, that if a telephone subscriber made a purchase from TSA within eighteen months of the telephone solicitation, there was no violation of section 501.059(4).
Here, the Department has stipulated that the seventy-seven consumers who received telephone solicitations from TSA had all made purchases from TSA within eighteen months of the solicitation. Under the circumstances, therefore, it appears that the exemption applies to these calls, and that summary judgment in this connection was improperly granted in favor of the Department.
III. Improper Use of Recorded Messages and Automatic Dialing Systems.
Section 501.059(7)(a) prohibits "mak[ing] or knowingly allow[ing] a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called." The Department alleged and the trial judge concluded that TSA violated this provision by the use or employment of an automated system for the selection and dialing of seventy-three consumer telephone numbers or the playing of a message when the number was answered. It is conceded by the Department that all of these calls were made from California. We note, however, that subsections (7)(a) and (b) do not appear to be subject to the "prior or existing business relationship" exceptions dealt with in the consideration of subsection (4). The reason is that subsection (4) applies to "any unsolicited telephonic sales call," while subsection (7) applies to "a telephonic sales call." As the language of the exemption makes it applicable only to "unsolicited telephonic sales calls," it is definitionally inapplicable to the proscriptions of subsection (7).
TSA does not deny that it made the calls in question. It argues, instead, that because all of these automated calls originated in California and are interstate calls, Florida has no authority to regulate them. It suggests, in essence, that the Florida statute might be fully avoided by the simple expedient of taking the automated call machine to a different state, and having the calls to Florida consumers made there. Because of the language of the Florida statute, however, we need not reach the issue of whether the states have jurisdiction over automated calls originating out of state. The statute covers this contingency.
In 47 U.S.C. § 227(f)(6) Congress specifically indicated that nothing in the TCPA was to be construed to prohibit the State "from proceeding in State court on the basis of an alleged violation of any general or criminal statute of such State." Indeed, Congress indicated that its regulation of the field was the "minimum necessary to protect the public against the harm caused by" automated dialing machines. See S.Rep. No. 102-178 at 5 (1991), as reprinted in 1991, U.S.C.C.A.N., 1968, 1973. *31 Even though it recognized that states might not have jurisdiction over interstate communications, Congress thus provided language that specifically allows states to impose more restrictive measures in this area. See FreeEats.Com, Inc. v. Indiana, 2006 WL 3025810 (S.D.Ind. Oct.24, 2006). Cf., ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 515 (3d Cir.1998). That is exactly what Florida has done.
The pertinent Florida statute, section 501.059(7), prohibits the use of automated phone messages with the following language:
No person shall make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to the number called.
(Emphasis added). The complaint filed by the Department clearly indicates that this cause of action accrued in Orange County, Florida, because TSA had a commercial business in Orange County, and that TSA was making or causing to be made telephonic sales calls to customers in Orange County, Florida, during which TSA played or caused to be played a recorded message upon each call being answered.
There is nothing contained within the TCPA that points to an intent by Congress to preempt such state claims. 47 U.S.C. § 227(f)(6), in fact, suggests just the opposite. Moreover, the very language of the Florida statute anticipates that the entity making the calls and the entity causing or knowingly allowing the calls to be made might very well be separate entities. Thus, while the making of the calls may have emanated from an out-of-state source, the causation element underpinning this particular violation of statute involves a business in Orange County, Florida, inviting customers in Orange County, Florida, to a sale being held in a store in Orange County, Florida. As the origination point of the automated calls is not relevant in this context, the trial court was correct in granting summary judgment on this issue.
IV. Conclusion.
In view of the foregoing, we affirm that part of the summary final judgment permanently enjoining TSA from further violating section 501.059(7), Florida Statutes, and affirm the civil fine associated with TSA's violations of that statute; reverse that part of the final summary judgment concluding that TSA violated section 501.059(4), Florida Statutes, including the injunctive relief and fines imposed in that connection; and remand for further proceedings consistent with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
SAWAYA and PALMER, JJ., concur.
NOTES
[1] The original defendant was The Sports Authority Florida, Inc. After this action began, TSA Stores, Inc., a Delaware corporation, was substituted as the party defendant.
[2] The national do-not-call registry is the product of a regulatory effort going back to 1991. It was aimed, first, at protecting the privacy rights of consumers, and second at reducing the risk of telemarketing abuse and fraud. See F.T.C. v. Mainstream Mktg. Servs., Inc., 345 F.3d 850, 857-58 (10th Cir.2003).
[3] Subsection (d) concerns and sets certain technical and procedural standards with respect to communications by facsimile machine or automatic telephone dialing systems, and grants to the Federal Communications Commission the authority to prescribe standards to implement the requirements of the subsection.
[4] Paragraph (2) of the subsection concerns the state use of databases.