The Honorable Lindsley Smith State Representative
340 North Rollston Avenue Fayetteville, Arkansas 72701-4178
Dear Representative Smith:
You have asked for my opinion on whether A.C.A. § 5-63-204(a)(1) (Repl. 2005), which prohibits certain so-called "robo-calls," is preempted by or otherwise conflicts with "federal law."
RESPONSE
For the reasons explained below, while it is difficult to say definitively, in my opinion the portion of subsection 5-63-204(a)(1) that prohibits robo-calls "in connection with a political campaign" is highly suspect when considered in relation to the First Amendment to the U.S. Constitution. In contrast, the provisions of subsection 5-63-204(a)(1) prohibiting commercial robo-calls probably do not conflict with any federal laws, whether they be constitutional or statutory.
DISCUSSION
Your question is broad enough to encompass both federal constitutional law and federal statutes. Accordingly, the following analysis delves into the First Amendment to the U.S. Constitution
and relevant federal statutory law. Your question has not been addressed by any Arkansas state or federal court. Accordingly, I have relied on several cases from other jurisdictions that squarely *Page 2 
address these federal law questions. Because subsection 5-64-204(a)(1) prohibits robo-calls of a political or commercial nature, the analysis divides neatly into those two parts.
While I will emphasize the relevant parts of the Arkansas statute throughout the opinion, it will be helpful to have the whole subsection before us as we begin. Subsection 5-64-204(a)(1) states:
 It is unlawful for any person to use a telephone for the purpose of offering any goods or services for sale, or for conveying information regarding any goods or services for the purpose of soliciting the sale or purchase of the goods or services, or for soliciting information, gathering data, or for any other purpose in connection with a political campaign when the use involves an automated system for the selection and dialing of telephone numbers and the playing of recorded messages when a message is completed to the called number.
For purposes of this opinion, I will use the term "robo-call" as shorthand for what this subsection refers to as "the use of a telephone . . . [that] involves an automated system for the selection and dialing of telephone numbers and the playing of recorded messages when a message is completed to the called number."
I. Political robo-calls
As noted above, subsection 5-64-204(a)(1) makes it illegal to robo-call anyone in Arkansas "for the purpose of . . . soliciting information, gathering data, or for any other purpose in connection with a political campaign. . . ." This provision, therefore, curtails speech that is of a political nature, which requires us to analyze its constitutionality under theFirst Amendment to the U.S. Constitution, which applies to the states via the Fourteenth Amendment.[1]
As the U.S. Supreme Court has observed, "because not every interference with speech triggers the same degree of scrutiny under the First Amendment, we must decide at the outset the level of scrutiny applicable."[2] Government regulations that burden speech are analyzed differently depending on whether the regulation is *Page 3 
content based or content neutral. A regulation is content based when it singles out for regulation a particular topic (e.g. any speech about a war, whether pro or con) or a particular viewpoint about that topic (e.g. anti-war speech).[3] Generally speaking, a regulation is content neutral if, by its terms, it does not single out for regulation a particular topic or viewpoint within that topic.
The threshold question whether a law is content based is critical because if the law is content based, it is subjected to much more exacting scrutiny. According to the U.S. Supreme Court, "[c]ontent-based regulations are presumptively invalid."[4]
That presumption can be overturned only if the regulation survives strict scrutiny, which means the regulation (1) must promote a "compelling" government interest (2) in a way that is both "necessary" to achieve that interest and (3) the least restrictive way to achieve it.[5]
Because, in the case of subsection 5-64-204(a)(1), the relevant category of analysis is subject-matter regulation, it will help to see how the U.S. Supreme Court has analyzed this kind of regulation.Consolidated Edison v. Public Service Commission[6]
exemplifies the Court's approach to a subject-matter regulation. In this case, a power company in New York included fliers in its billing envelopes that advocated the use of nuclear power. A few months later, a group opposed to nuclear power asked the power company to include a flier in its envelopes that contested the earlier flier. When the power company refused, the group went to the state's Public Service Commission asking it to "open Consolidated Edison's billing envelopes to contrasting views on controversial issues of a public importance."[7] The Commission denied the group's request and also prohibited the *Page 4 
power company "from using bill inserts to discuss political matters, including the desirability of future development of nuclear power."[8]
The power company sued, arguing that the Commission's ruling was an unconstitutional restriction on its First Amendment rights. The state's trial court agreed, but the state's intermediate appellate court reversed the trial court, and the state's highest appellate court affirmed. The state's appellate courts made the crucial determination that the Commission's regulation was content neutral, which opened the door to analyzing the regulation under a less exacting standard.[9]
But the U.S. Supreme Court reversed the state appellate court. When it appeared before the U.S. Supreme Court, the Commission argued that its regulation was constitutionally acceptable because it applied to all speech about nuclear power, whether pro or con. But the Consolidated Edison Court was not persuaded: "TheFirst Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic."[10] After this threshold finding that the regulation was content-based, the Court went on to invalidate it for failing strict scrutiny.
In my opinion, a court would probably rely on ConsolidatedEdison (and its line of cases) to hold that the prohibition on political robo-calls in A.C.A. § 5-63-204(a)(1) is content-based. As in Consolidated Edison, the Arkansas statute expressly prohibits a particular topic of speech via a certain medium; namely, any speech via an automated system that is "for any [] purpose in connection with a political campaign." Accordingly, the court would determine that, to that extent, subsection 5-63-204(a)(1) is presumptively invalid and must be subjected to strict scrutiny.
The three elements of strict scrutiny listed above are mixed questions of law and fact. Because this office, when issuing opinions, is not equipped or authorized to make the key factual findings necessary for a thorough strict-scrutiny analysis, I am not able to definitely opine on each element. I can say, however, that the U.S. *Page 5 
Supreme Court has, time and again, emphasized that political speech is at the very core of the First Amendment.[11] Given that the Arkansas statute expressly prohibits all speech related topolitical campaigns via a particular medium, I must conclude that the prohibition on political robo-calls in subsection 5-64-204(a)(1) is highly constitutionally suspect.[12]
 II. Commercial prohibition
In addition to the prohibition on political robo-calls, subsection 5-64-204(a)(1) also prohibits speech that falls within the definition of "commercial speech," as that phrase has been defined by the U.S. Supreme Court.[13] The relevant portion of subsection 5-64-204(a)(1) makes it illegal for anyone to robo-call an Arkansas citizen "[1] for the purpose of offering any goods or services for sale, or [2] for conveying information regarding any goods or services for the purpose of soliciting the sale or purchase of the goods or services." As noted above, the Court has explained that "because not every interference with speech triggers the same degree of scrutiny under theFirst Amendment, we must decide at the outset the level of scrutiny applicable."[14] *Page 6 
 a. Commercial Speech under the First Amendment
While the statute's prohibition on commercial speech is content based — just like the prohibition on political robo-calls — commercial speech has less protection under theFirst Amendment. As the U.S. Supreme Court has noted: "Our jurisprudence has emphasized that `commercial speech' [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression."[15]
When a government regulation burdens commercial speech, courts will apply a four-part test to determine whether the regulation passes the lesser standard of "intermediate scrutiny."[16] First, the commercial speech or advertisement cannot be false, deceptive, or about illegal activities. Second, the government regulation must be justified by a "substantial government interest." Third, the law must directly advance that interest. Finally, the regulation must be a "reasonable fit" between the government's ends (i.e., the substantial government interest) and the means that the regulation employs to accomplish those ends.[17]
As with most commercial-speech issues, the analysis revolves around the last three elements, which are highly fact specific. Accordingly, as this office has noted before in the context of analyzing commercial speech issues, [18] I am unable to definitively opine about how these elements apply in the context of the prohibition on commercial robo-calls. Nevertheless, I hope that the foregoing helps explain how a court would approach your question. *Page 7 
 b. Federal Statutes — Telephone Consumer Protection Act
Apart from the U.S. Constitution, there are several federal statutes to consider when analyzing whether A.C.A. § 5-64-204(a)(1) conflicts with federal law. The most obvious statute on point is the Telephone Consumer Protection Act of 1991 (TCPA), which is codified at 47 U.S.C. § 227. The TCPA governs,inter alia, the use of what it calls "automatic telephone dialing systems," which is essentially identical to what we have been referring to as "robo-calls." With some exceptions, the TCPA prohibits robo-calls to emergency phone lines; to guest rooms at hotels or nursing homes; to a phone system that charges the called party, such as a paging system; or "to any residential telephone line . . . without the prior express consent of the called party."[19]
Finally, the TCPA contains a provision, which courts have called the "savings clause," that purports to explain how the TCPA is meant to relate to states' laws on robo-calls:
 (f) Effect on State law
 (1) State law not preempted . . .
 [N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits —
 (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
 (B) the use of automatic telephone dialing systems;
 (C) the use of artificial or prerecorded voice messages; or
 (D) the making of telephone solicitations.[20]
To understand the relationship between the TCPA and A.C.A. § 5-64-201(a)(1), we must carefully analyze this savings clause. The majority of courts that have conducted a detailed analysis of this clause have followed the analysis of the Supreme Court of North Dakota in Stenehjem v. FreeEats.com,Inc.[21] Given that *Page 8 Stenehjem exemplifies the majority view on the savings clause, we will spend a good deal of time analyzing it.[22]
In Stenehjem, a Virginia-based telemarketing company, FreeEats.com, placed robo-calls into North Dakota. The calls violated a North Dakota statute that, with a few exceptions, prohibited robo-calling for any purpose. When the state sued FreeEats.com for violating its statute, FreeEats.com defended by implicitly conceding that it violated North Dakota's statute. But, FreeEats.com argued, outside of North Dakota's boarders, the TCPA preempts state laws. Further, the company maintained, given that its calls, which were from Virginia, were legal under the TCPA, the company was not liable. The trial court held that FreeEats.com had violated the North Dakota statute, which was not preempted by the TCPA.
The North Dakota Supreme Court agreed. The Stenehjem court started its analysis by noting the importance of properly reading the savings clause: "[T]he crux of this case lies in the interpretation of the TCPA's `savings clause',"[23] the relevant part of which is, as quoted above, that the no part of the TCPA "shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits [four sets of items]."[24]
As it began its analysis of the savings clause, theStenehjem court made clear several principles of statutory interpretation, elucidated by the U.S Supreme Court, that apply to any interpretation of federal statutes: *Page 9 
 In interpreting the statute [i.e. the TCPA], we are guided by well-settled rules of federal statutory construction. When the language of a statute is plain, "the sole function of the courts — at least where the disposition required by the test is not absurd — is to enforce it according to its terms." Dodd v. United States, 545 U.S. 353, [359] (2005). . . . The "preeminent canon of statutory interpretation" requires that courts "presume that [the] legislature says in a statute what it means and means what it says there. BedRoc Ltd. v. United States, 541 U.S. 176, 183 (2004). . . . The court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous," BedRoc, [541 U.S.] at 183, and courts and administrative agencies must give effect to the unambiguously expressed intent of Congress. Norfolk Western Ry. Co. v. American Train Dispatchers Ass'n, 499 U.S. 117, 128 (1991).[25]
Finally, the Stenehjem court explained U.S. Supreme Court case law indicating that when a statute unambiguously requires a result that is not absurd, courts must enforce that unambiguous result. This is the case even if that result is not in line with Congress's original intention made evident by legislative history because, according to the U.S. Supreme Court, it is for Congress — not courts or others — to amend a statute if its plain language does not accurately reflect Congress's intent.[26]
With these principles in mind, the Stenehjem court went on to hold that the TCPA's savings clause, when read according to standard rules of grammar and statutory construction, unambiguously contains two propositions about the TCPA's relationship to state laws on the same subject. First, states can enact intrastate laws that are more restrictive than the TCPA. Second, with respect to interstate robo-calls, states cannot enact more strict regulations than the TCPA, but states can enact outright prohibitions.
The court's reasoning for these two conclusions revolved around the wording of the savings clause, which contains two phrases separated by a comma and an "or." I will quote fromStenehjem's rationale at length: *Page 10 
 The TCPA savings clause expressly exempts from preemption "any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits" [robo-calls]. . . . The State contends that the use of the disjunctive "or," preceded by a comma, indicates the word "intrastate" in the first clause does not modify the second clause. FreeEats essentially ignores the language of the statute and bases its argument upon the contention that the legislative history demonstrates Congressional intent to preempt all state statutes affecting interstate calls.
 The word "or" is disjunctive in nature and ordinarily indicates an alternative between different things or actions. Reiter v. Sonotone Corp., 442 U.S. 330, 338-39 (1979). . . . Terms or phrases separated by "or" have separate and independent significance. Reiter, at 338-39. Coupled with the comma preceding "or," which indicates a separate clause, the statutory language clearly creates two distinct and independent phrases. Thus, read logically and grammatically, the statute states that nothing in the TCPA preempts any state law "that imposes more restrictive intrastate requirements or regulations on" the enumerated classes of calls, and nothing in the TCPA preempts any state law "which prohibits" calls within the enumerated list. "Intrastate" unambiguously modifies only the first clause, not the second. If Congress had intended that the second part of the statute apply only to intrastate calls, "it could simply have said that." Great-West [Life Annuity Ins. Co. v. Knudson], 534 U.S. [204,] 218. Because the statutory text is unambiguous, our inquiry into its meaning ends there. BedRoc, 541 U.S. at 183.[27]
Having settled on what it took to be the plain reading of the savings clause, the court addressed whether that reading was absurd, as it is required to do under the principles of statutory interpretation noted above. Again, I quote liberally fromStenehjem's explanation about why the plain meaning is not absurd, as its analysis has become the majority position:
 FreeEats contends that, even if the statutory language is clear, a literal interpretation of the statute would create an absurd result. . . . *Page 11 
Specifically, FreeEats argues it is illogical to allow states to adopt more restrictive regulations on only intrastate calls, but to allow wholesale prohibition of certain classes of both intrastate and interstate calls.
 FreeEats contends that one important policy basis for enactment of the TCPA was to alleviate the excessive burdens which might be placed upon interstate telemarketers if they were required to comply with a plethora of conflicting regulations from all fifty states. In this context, there may be a substantial difference between the effect of state laws which seek to impose voluminous regulations upon interstate calls and those which wholly prohibit a specific class of interstate calls. The TCPA and corresponding regulations govern many diverse aspects of such calls. For example, under the relevant federal regulation, telephone solicitations may only be made to a residential telephone customer between 8 a.m. and 9 p.m. local time. 47 C.F.R. § 64.1200(c)(1). It is foreseeable that, if each state adopted differing time restrictions on telemarketing calls, it may be difficult for a telemarketer to adjust its equipment to place calls to the various states only within a particular state's permissible hours. The states could conceivably create a stream of inconsistent and conflicting regulations on innumerable aspects of telemarketing calls, thereby making compliance with each individual state's unique set of rules and regulations burdensome.
 By contrast, it would be a relatively simple matter for a telemarketer to comply with a state statute which wholly prohibits certain enumerated classes of calls. When contemplating placing a certain type of call, the telemarketer need only review state law to determine if such calls are prohibited in a particular state. If so, it is presumably an easy task for the telemarketer to refrain from placing calls to that state's residents. See Utah Div. of Consumer Prot. v. Flagship Capital, 125 P.3d 894 ("the record does not reflect that a national telemarketer would confront any substantial hardship by being required to determine which of its calls reach the telephones of Utah residents").
 We conclude that a literal interpretation of the unambiguous language of the statute does not lead to an absurd result. . . . We therefore interpret the express language of [the savings clause] to *Page 12 
provide that the TCPA does not preempt any state law which prohibits interstate calls using automatic telephone dialing systems or using artificial or prerecorded voice messages.[28]
In summary, the Stenehjem court determined that the plain language of the savings clause specifically permits states to prohibit interstate robo-calls calls to their citizens. Further, this plain reading is not absurd. The standard rules of statutory construction require us to give effect to the legislature's intent, which is determined, in the first instance, by a close reading of the statute's plain language. If that close reading leads to an unambiguous conclusion that is not absurd, then we must give effect to that reading.
III. Conclusion
In conclusion, A.C.A. § 5-64-204(a)(1) prohibits two kinds of robo-calls: those "in connection with a political campaign" and those of a commercial nature. The former prohibition is highly constitutionally suspect under theFirst Amendment to the U.S. Constitution. This is because the Arkansas statute, as currently worded, is content-based, which means it is subjected to the highest level of scrutiny. Because that scrutiny requires certain factual findings that I am unable to make when issuing opinions, I cannot definitively opine on the provision's constitutionality. But given the very high bar of strict scrutiny, and given the fact that most laws subjected to that scrutiny are invalidated, I must conclude that it is highly suspect.
The commercial prohibition, however, probably does not violate theFirst Amendment or the TCPA, in my opinion. Under theFirst Amendment, commercial speech is less protected than political speech, which means that the commercial prohibition in subsection 5-64-204(a)(1) is subjected to the lesser standard of intermediate scrutiny. As with the political-speech test, the commercial-speech test requires certain factual findings that I am unable to make when issuing opinions. Accordingly, I cannot definitely opine on whether the commercial-speech provision of subsection 5-64-204(a)(1) will pass constitutional scrutiny. But given that the standard is lower than that for political speech, the commercial-speech provision stands a greater chance of passing scrutiny. Further, in my opinion, a court in our jurisdiction reviewing your specific question would probably follow the majority of courts in concluding that the TCPA does not preempt state laws that prohibit inbound, interstate robo-calls. This conclusion follows from a plain reading of the TCPA's savings clause. *Page 13 
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/RO:cyh
[1] E.g., Thornhill v. Alabama, 310 U.S. 88, 95 (1940).
[2] Turner Broad. Sys. v. Federal Commun. Commn.,512 U.S. 622, 637 (1992).
[3] Burson v. Freeman, 504 U.S. 191, 197 (1992). Some kinds of speech receive less or no protection under the First Amendment. Examples of the former include commercial speech and some types of sexually oriented speech. Examples of the latter include speech that incites illegal activity, fighting words, and obscenity.See generally, Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES, 2d ed. (Aspen 2002), § 11.3.
[4] R.A.V. v. City of St. Paul,505 U.S. 377, 382 (1992).
[5] E.g., Burson v. Freeman, 504 U.S. 191, 198 (1992).
[6] Consol. Edison Co. of New York, Inc. v. Public ServiceCommn. of New York, 447 U.S. 530 (1980).
[7] Id. at 532.
[8] Id.
[9] A content-neutral regulation can restrict speech provided that it does so in a way that is a legitimate time, place, or manner restriction on that speech. E.g., Consolidated Edison,447 U.S. at 536.
[10] Consolidated Edison, 447 U.S. at 530.
[11] Cf. Eu v. San Francisco Cty. Democratic Central Comm.,489 U.S. 214, 223 (1989) ("The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.") (internal quotation omitted); Garrison v.Louisiana, 379 U.S. 64, 74-75 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."); Mills v. Alabama,384 U.S. 214, 218 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.").
[12] As the U.S. Supreme Court noted in Burson,504 U.S. at 197 n3, the conclusions of this analysis are essentially the same as the analysis under the Equal Protection clause of theFourteenth Amendment.
[13] While the U.S. Supreme Court has not provided a list of the necessary and sufficient elements that combine to form the definition of "commercial speech," it has provided a kind of working definition into which A.C.A. § 5-64-204(a)(1) clearly falls. Under this definition, "commercial speech" under the First Amendment is any speech (1) that is an advertisement of some form, (2) that refers to a specific product, and (3) for which the speaker has an economic motive. See, e.g., Bolger v. Youngs DrugProducts Corp., 463 U.S. 60, 67 (1983).
[14] Turner, 512 U.S. at 637.
[15] Bd. of Trustees of the State Univ. of New York v. Fox,492 U.S. 469, 477 (1989) (internal citations omitted).
[16] Florida Bar v. Went For It, Inc.,515 U.S. 618, 623-24 (1995).
[17] Central Hudson Gas Elec. Corp. v. Public Serv. Commn. ofNew York, 447 U.S. 557 (1980); Lorillard TobaccoCo. v. Reilly, 533 U.S. 525, 527 (2001).
[18] See, e.g., Op. Att'y Gen. Nos. 2001-187, pp. 3-4; 98-017, p. 4.
[19] 47 U.S.C. §§ 227(b)(1)(A)(i)-(b)(1)(B).
[20] 47 U.S.C. § 227(f) (emphasis added).
[21] 712 N.W.2d 828 (N.D. 2006).
[22] Of the eight other courts I have found that analyzed whether the TCPA preempts all state laws to the extent they apply to inbound, interstate robo-calls, five courts concur withStenehjem's conclusion and three do not. None of the latter three actually analyze the wording of the savings clause. Courts either concurring in Stenehjem's conclusion and/or rationale include the following: Palmer v. Sprint Nextel Corp.,674 F. Supp. 2d 1224, 1231 (W.D. Wash. 2009); U.S. v. DishNetwork, LLC, 667 F. Supp. 2d 952, 964 (C.D. Ill. 2009);FreeEats.com, Inc. v. State of Indiana, 2006 WL 3025810, ** 6-8 (S.D. Ind. 2006) (rev'd in part on other grounds and vac'd in part on other grounds by FreeEats.com, Inc. v. Indiana,502 F.3d 590 (7th Cit. 2007); Utah Div. of ConsumerProtec. v. Flagship Capital, 125 P.3d 894, 897-901 (Utah 2005);TSA Stores, Inc. v. Dept. of Agric. ConsumerProtec. Servs., 957 So.2d 25, 27-29 (Fla. App. 2007). But seeKlein v. Vision Lab Telecomm., Inc.,399 F. Supp. 2d 528, 541-42 (S.D.N.Y. 2005); Chamber of Com. ofUnited States v. Lockyear,2006 WL 462482, **6-8 (E.D. Cal. 2006); Charvat v.Telelytics, LLC, 2006 WL 2574019, *10 (Ohio App. 2006).
[23] Stenehjem, 712 N.W.2d at 832.
[24] 47 U.S.C. § 227(f)(1) (emphasis added).
[25] Stenehjem,712 N.W.2d at 833 (some citations omitted).
[26] Id. at 834; Dodd v. United States,545 U.S. 353, 359 (2005).
[27] Stenehjem,712 N.W.2d at 834 (some internal citations omitted).
[28] Id. at 834-35.